APEX TRIAL LAW
A Professional Corporation
Thomas W. Kohler, Bar No. 312552
tkohler@apextrial.com
Ryan M. Ferrell, Bar No. 258037
rferrell@apextrial.com
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660
Tel: (949) 438-0033
Fax: (949) 299-0133

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA GOMEZ, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>JELLY BELLY CANDY COMPANY, and DOES 1-25, Inclusive,<br><br>    Defendants. | Case No.: 5:17-cv-00575 (FFMx)<br><br>[Assigned to Judge Cormack J. Carney Courtroom 9B]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>Date:  June 12, 2017<br>Time:  1:30 P.M.<br>Ctrm;  9B |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY ...................................................... 3

III.  ARGUMENT ............................................................................................................ 4

    A.  INTRODUCTION ........................................................................................... 4

    B.  REASONABLE CONSUMERS COULD HAVE BEEN
        DECIEVED BY DEFENDANT'S LABELS ................................................. 6

    C.  LABEL INFORMATION CANNOT BE FOUND NOT TO
        BE MATTERIAL AS A MATER OF LAW. ............................................. 10

    D.  VIOLATIONS OF LABELING LAWS CLEARLY GIVE
        RISE TO ACTIONABLECLAIMS ............................................................ 12

    E. THE PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE
        RELIEF BEFORE THIS COURT ............................................................. 22

IV.  CONCLUSION ...................................................................................................... 24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 4

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1988) ....................................................................... 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 4

*Brazil v. Dole Packaged Foods, LLC,*
   D.C. No. 5:12-cv-01831-LHK, Docket No. 14-17480 ..................................... 15, 16

*Conservation Force V. Salazar,*
   646 F.3d 1240 (9th Cir. 2011) ....................................................................... 4

*Daniels–Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ........................................................................ 4

*Freeman v. Time, Inc.,*
   68 F.3d 285 (9th Cir.1995) ........................................................................... 8

*FTC v. Proctor & Gamble Co.* (1967)
   386 U.S. 568 [18 L.Ed.2d 303, 87 S.Ct. 1224] ......................................... 11

*FTC v. Standard Education Soc.,*
   302 U.S. 112 (1937) ................................................................................. 19, 20

*Ileto v. Glock, Inc.,*
   349 F.3d 1191 (9th Cir. 2003) ...................................................................... 4

*Jou v. Kimberly-Clark Corp.,*
   No. C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ......................... 5

*Kane v. Chobani,*
   No. 14-15670, 2016 US. App. LEXIS 5517, 2016 WL 1161782 (9th
   Cir. Mar. 24, 2016) ................................................................................. 15, 18

*Khasin v. Hershey Co.,*
   5:12-cv-01862 EJD, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ........................... 12

*Machlan v. Procter & Gamble Company*,
     77 F.Supp.3d 954 (2015) ........................................................................ 23

*Mains v Whole Foods Market*,
     Case No. 5:12-cv-05652-EJD ................................................................. 15

*Mary P. Swearingen v. Yucatan Foods, L.P.*,
     24 F.Supp.3d 889, 900 (N.D. Cal. 2014) ................................................. 13

*McKinnis v. Kellogg USA*,
     2007 WL 4766060 (C.D.Cal., May 21, 2007) ......................................... 13

*Morgan v. Wallaby Yogurt Co.*,
     No. 13-cv-00296-WHO, 2014 U.S. Dist. Lexis 34548 (N.D. Cal. Mar.
     13, 2014) ........................................................................................... 18, 19

*Pratt v. Whole Foods Market California, Inc.*,
     Case No. 5:12-cv-05652, 2015 WL 5770799 (N.D. Cal. September 30,
     2015) .................................................................................................. 14, 15

*Rahman v. Mott's LLP*,
     No. 13–3482, 2014 WL 325241 (N.D.Cal. Jan. 29, 2014) ....................... 22

*Ries v. Arizona Beverages USA LLC.*,
     287 F.R.D. 523 (N.D. Cal 2012) ............................................................. 22

*Swartz v. KPMG LLP*,
     476 F.3d 756 (9th Cir. 2007) ..................................................................... 6

*Tait v. BSH Home Appliances Corp.*,
     289 F.R.D. 466 (C.D. Cal. 2012) ............................................................... 4

*Videtto v. Kellogg USA*,
     2009 WL 1439086 (E.D.Cal., May 21, 2009) ......................................... 13

*Williams v. Gerber Prods. Co.*,
     552 F.3d. 934 (9th Cir. 2008) ........................................................... *passim*

*Wilson v. Frito-Lay N. Am., Inc.*,
     961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................... 5

*Yumul v. Smart Balance, Inc.*,
     733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................. 8, 9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

**California Cases**

*Brockey v. Moore,*
    107 Cal. App. 4th 86 (2003) ........................................................................ 7

*Colgan v. Leatherman Tool Group, Inc.,*
    135 Cal. App. 4th 663 (2006) ................................................................ 7, 8

*Colgan v. Leatherman Tool Grp.,*
    *38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) (citation and quotation marks*
    *omitted)* ........................................................................................................ 15

*Daugherty v. Am. Honda Motor Co., Inc.,*
    144 Cal. App 4th 824 (2006) ...................................................................... 1

*Engalla v. Permanente Medical Group, Inc.,*
    15 Cal.4th 951 (1997) ................................................................................ 10

*In re Tobacco II Cases* (2009)
    46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20] ........................... 12, 23

*In re Vioxx Class Cases,*
    180 Cal.App.4th 116, 103 Cal.Rptr.3d 83 (2009) .................................. 8, 9

*Kwikset Corp. v. Superior Court,*
    51 Cal.4th 310 (2011) ..................................................................... 10, 11, 12

*Linear Technology Corp. v. Applied Materials, Inc.,*
    152 Cal.App.4th 115, 61 Cal. Rptr. 3d 221 (2007) .................................... 5

*Wang v. Massey Chevrolet,*
    97 Cal. App. 4th 856 (2002) ....................................................................... 1

**Federal Statutes**

15 U.S.C.
    § 1051 et seq. ............................................................................................. 11

21 U.S.C.
    FDCA ............................................................................................................ 5
    § 333(a) ......................................................................................................... 4
    § 343(a)(1)..................................................................................... 5, 15, 22
    § 403(a)(1)......................................................................................... 15, 22

**Federal Regulations**

21 CFR § 101.30 .................................................................................................. 21

21 C.F.R. § 101.4(a)(1) .................................................................................... 2, 20

21 CFR § 101.4(b)(2) .......................................................................................... 22

21 C.F.R. § 101.4(b)(20) ........................................................................... 2, 3, 6, 20

21 CFR §102.5 ................................................................................ 15, 22, 23, 24

21 CFR § 102.5(a) ......................................................................................... 20, 21

21 CFR § 102.5(d) ................................................................................................ 20

21 CFR § 120 ...................................................................................................... 21

21 CFR § 120.1 .............................................................................................. 15, 22

21 C.F.R. § 120.1(a) ................................................................................... 6, 20, 21

21 C.F.R. § 168.130 .................................................................................... 2, 20, 21

21 C.F.R. § 184.1854 ..................................................................................... *passim*

21 CFR § 184.1854(a) ......................................................................................... 20

**Federal Rules**

Fed. R. Civ. P.  9(b) .......................................................................................... 14

Fed. R. Civ. P. 12(b)(6) ................................................................................... 4, 5

**California Statutes**

Cal. Health & Safety Code
    § 110100 .................................................................................................... 5
    § 110760 .................................................................................................... 4
    §110770 ...................................................................................................... 4

**Other Authorities**

Consumer Choice (2004) 118 Harv. L.Rev. 525, 529 .................................... 11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

*Food Labeling, Nutrient Content Claims, General Principles, Petitions,*
*Definition of Terms; Definitions of Nutrient Content Claims for the Fat,*
*Fatty Acid, and Cholesterol Content of Food,* 58 Fed. Reg. 2302, 2407
(Jan. 6, 1993)..........................................................................................................16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

# I. INTRODUCTION

Plaintiff Jessica Gomez ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant's motion to dismiss ("MTD") the Complaint ("Complaint") brought by defendant Jelly Belly Candy Company ("Defendant").

Plaintiff brings claims for relief under the UCL, FAL, CLRA, and Negligent Misrepresentation based on Defendant's alleged violations of the Sherman Law. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal. App 4th 824, 271 (2006). Whether a product label is deceptive so as to mislead a reasonable consumer is normally a question of fact incapable of resolution on a motion to dismiss. *Williams v. Gerber Prods. Co.,* 552 F.3d. 934, 938-939 (9th Cir. 2008). Where there are food packaging features that could likely deceive a reasonable consumer, the Ninth Circuit has found that granting a motion to dismiss is inappropriate. *Id* at 939.

The dangers of sugared foods are now well-known and consumers avoid foods that contain added sugar. To thwart these efforts by consumers, Defendant and other food manufacturers use the term "evaporated cane juice" on food labels to refer to ingredients that are required to be called "sugar" under federal and state law. Defendant ignores these laws and uses the unlawful term in order to diguise the presence of added sugar in its products. Plaintiff and other consumers were deceived by Defendant's misrepresentations and she now brings this action, seeking redress for Defendant's illegal conduct.

Plaintiff's claims are predicated on violations of food labeling requirements of California's Sherman Law. Those state requirements were directly incorporated from, or parallel to, federal statutes and regulations. Pursuant to those federal laws, Defendant may not use the term "evaporated cane juice" to describe food ingredients that fall

1   within the definition of "sucrose" that was promulgated by the Food & Drug
2   Administration ("FDA"). Rather, under binding, clear, and unambiguous federal
3   regulations, any ingredient that falls within the definition of "sucrose" must be called
4   "sugar."

5       The FDA defines "sucrose" as a substance "obtained by crystallization from
6   ***sugar cane*** or sugar beet juice that has been extracted by pressing or diffusion, then
7   clarified and ***evaporated***." *See* 21 C.F.R. § 184.1854 (emphasis added). In turn, 21
8   C.F.R. § 101.4(b)(20) provides that the common or usual name for an ingredient falling
9   within this definition is "sugar." Pursuant to 21 C.F.R. § 101.4(a)(1), ingredients must
10  be referred to by their common or usual name on food labels. Therefore, based on
11  binding federal law, the ingredient that Defendants denominate as "evaporated cane
12  juice" must be called "sugar."

13      Rather than address these regulations, Defendant entirely ignores them and acts
14  as if they do not exist. Instead, Defendant asserts that Plaintiff's claims are not based on
15  binding federal law that has been controlling at all times, but solely on non-binding
16  draft guidance issued by the FDA in 2009 and 2016. This is simply not true.

17      Moreover, that draft guidance document and the subsequent final guidance issued
18  by the FDA in 2016 (which is also non-binding) simply applied facts to existing
19  binding federal laws and advised that, under those clear and unambiguous federal laws,
20  no sweetener derived from sugar cane can ever be called "evaporated cane juice." The
21  guidance documents further advised that, under the applicable federal statutes and
22  regulations, if a sweetener is derived from sugar cane *syrup*, it must be called "cane
23  syrup" or "sugar cane syrup" pursuant to 21 C.F.R. § 168.130. Otherwise, if it falls
24  within the definition of "sucrose," it must be called "sugar." Neither the draft guidance,
25  nor the final guidance, changed or "settled" the applicable law. Instead, that law was
26  settled long ago by the relevant federal statutes and regulations. All that the guidance
27  documents did was maintain the same position that FDA has always had on the use of
28  the term "evaporated cane juice" and that position is based on binding federal statutes

1    and regulations that control the issues presented in this motion.

2                    **II.  FACTUAL AND PROCEDURAL HISTORY**

3         The ingredient that Defendant denominates as "evaporated cane juice" is sugar.

4    Complaint at ¶¶ Introduction, 10. This ingredient falls within the FDA's broad

5    definition of "sucrose" (21 C.F.R. § 184.1854) and is obtained by crystallization from

6    sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then

7    clarified and evaporated. *Id*. at ¶ 16.  Under 21 C.F.R. § 101.4(b)(20), any ingredient

8    that falls within this definition must be called "sugar."

9         Nevertheless, Defendant and other food manufacturers attempt to hide the

10   presence of added sugar in products by referring to the sugar as "evaporated cane juice"

11   in the list of ingredients on food labels. *Id*. at ¶¶ Introduction, 10, 12, 19-21. The health

12   risks of sugar are now well-known. Consumers seek to avoid foods with added sugar

13   and look for "sugar" in ingredients lists. However, most consumers are unfamiliar with

14   the term "evaporated cane juice" and do not know that it is sugar. *Id*. at ¶¶ Introduction,

15   20, 21. That is precisely why Defendant uses the term in ingredient lists. Defendant

16   wants to increase sales by intentionally misleading consumers. *Id*. at ¶ 21. Reasonable

17   consumers are misled by this deceptive term every day. *Id.* at ¶¶ 20, 21.

18        Plaintiff was just such a consumer. She purchased a product manufactured,

19   distributed, or sold by Defendant that contains added sugar, but refers to this sugar as

20   "evaporated cane juice" in ingredient lists. *Id.* at ¶¶ Introduction, 10, 21. Specifically,

21   Plaintiff purchased Sport Beans. *Id.* at ¶ Introduction. Plaintiff did not know what

22   evaporated cane juice really was, but believed it to be healthier than sugar. *Id.* at ¶¶

23   Introduction, 10, 20, 21. Had she known what evaporated cane juice really was, she

24   would not have paid as much, if at all, for the product. *Id.* at ¶ 20. Plaintiff, relying on

25   these false and misleading labels, also believed this product to be of a different nature

26   than it actually was. *Id.* at ¶ 21.

27        Due to the deceptive labeling, this product is illegal and cannot be lawfully

28

1  manufactured, sold, delivered, held, offered for sale, or received in commerce.[1]  *Id.* at ¶

2  19; Cal. Health & Safety Code §§ 110760, 110770.

3      Plaintiff filed this action in the Superior Court for the County of San Bernardino

4  on February 22, 2017.  Defendant filed a Notice of Removal on March 24, 2017.  Dckt.

5  1.  Defendant filed a Motion to Dismiss on April 21, 2017. Dckt. 12.

6                          **III.  ARGUMENT**

7  **A. INTRODUCTION**

8      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of

9  the claims alleged in the complaint. *Ileto v. Glock, Inc*., 349 F.3d 1191, 1199-1200 (9th

10 Cir. 2003). To survive a motion to dismiss, "a complaint must contain sufficient factual

11 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

12 *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

13 557 (2007)). All of a plaintiff's well-pleaded allegations of material fact are taken as

14 true and construed in the light most favorable to the plaintiff. *Daniels–Hall v. Nat'l*

15 *Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

16     Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a

17 "lack of cognizable legal theory or the absence of sufficient facts under a cognizable

18 legal theory."  *Conservation Force V. Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011)

19 (citing *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).  A claim is

20 plausible on its face "when the plaintiff pleads factual content that allows the court to

21 draw the reasonable inference that the defendant is liable for the misconduct alleged."

22 *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

23     "California's UCL, FAL and CLRA all rely on the same objective test, that is,

24 whether members of the public are likely to be deceived." *Tait v. BSH Home*

25 *Appliances Corp*., 289 F.R.D. 466, 480 (C.D. Cal. 2012). "[T]hese laws prohibit not

26 only advertising which is false, but also advertising which, although true, is either

27 ───────────────
[1] Indeed, dealing in misbranded food products is a strict-liability crime. *See* 21 U.S.C. §
28 333(a)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." Williams, 552 F.3d at 938. This is so because whether an advertisement is deceptive often turns not only on the language of the advertisement itself, but also on extrinsic evidence, such as consumer surveys. *Id.* at 938-39 [explaining that determining "[w]hether a practice is deceptive, fraudulent, or unfair" generally "requires consideration and weighing of evidence from both sides"] (quoting *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 61 Cal. Rptr. 3d 221, 236 (2007)); see also *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) [explaining that the "meaning a reasonable consumer would ascribe" to a term is "not a question that can be resolved on a Rule 12(b)(6) motion"]. As the Ninth Circuit noted in Williams, motions to dismiss deceptive business practice claims should be granted only in "rare" situations, when the advertisement at issue is patently puffery, or where the allegations of deception are otherwise implausible. 552 F.3d at 939.6.

Plaintiff's claims are state law claims based on the Sherman Law's incorporation of the Food, Drug, & Cosmetics Act's ("FDCA") labeling requirements related to standards of identity and use of an ingredient's common and usual name.  *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.")

"Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if 'its labeling is false or misleading in any particular.'" *Wilson v. Frito-Lay N. Am., Inc.,* 961 F. Supp. 2d 1134, 1140 (N.D. Cal. 2013).   Relevant to the instant action, the following regulations have been promulgated to define when certain terms can and cannot be used in describing ingredients on food labels: **(1)** The regulations define sucrose by its chemical composition and explain that sucrose is "obtained by crystallization from

sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." 21 C.F.R. § 184.1854.  The regulations further require that any ingredients that fall within the definition of "sucrose" must contain the designation "sugar on food labels. 21 C.F.R. § 101.4(b)(20)  ("For purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance of § 1874.1854 of this chapter.") Complaint at ¶ 16. **(2)** the regulations also define that "juice" as "aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one of more fruits or vegetables, or any concentrates of such liquid or puree." 21 C.F.R. 120.1(a).

## B.   REASONABLE CONSUMERS COULD HAVE BEEN DECIEVED BY DEFENDANT'S LABELS.

Much of Plaintiffs motion to dismiss is predicated upon assertions of fact outside the four-corners of the Complaint (facts that are also not the proper subject matter of judicial notice). Specifically, Plaintiff wants the court to summarily conclude reasonable consumers of their product are only athletes with substantial knowledge of nutritional labels.  MTD at pages 6-9.  This assertion is improper as, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The defendant has provided the labels of their product as part of the MTD but those labels do not limit the purchase of the product to some a subset of athletes but rather, the label advertise the product to anyone who, wants "QUICK ENERGY for

sports performance," (MTD at page 3).

That this product is for anyone who is interested is obvious from the packaging, still the Plaintiff wishes, this Court to improperly conclude that no reasonable consumer could have been deceived by this product because only high performance athletes were part of the target market. *Id*. There is nothing about this label that limits the population of consumers to athletes, in fact, a person who is less athletic may be more prone to

1   seek this product as it appears to promote sports performance, something a non-athlete

2   may very much want before engaging in physical activity.  Nevertheless, the assertion

3   that only athletes bought this product, if it is based on facts at all, is based on facts

4   completely outside these pleadings and this court should disregard all discussion

5   stemming from those improper and unfounded assertions.

6        Even if such an inquiry were proper at this stage, Defendant offers no reasons

7   why an athlete would have any more specialized knowledge than a lay person regarding

8   the sugar content of their product.  The Defendant wishes this court to blithely accept

9   that athletes all have an innate insight into the labeling language that Defendant chose in

10  order to disguise its sugar content. MTD at page 7.   Plaintiff offers no support for its

11  attribution of such specialized knowledge to these athletes.  However, Defendant does

12  demonstrate the confusion that is created by their label by showing the court the

13  ingredient list from one Sport Bean product: "Evaporated cane juice, tapioca syrup,

14  cherry juice from concentrate." MTD at page 3. According to Defendant, when an

15  ingredient list contains a "juice", a syrup and a juice from concentrate, an athlete will

16  naturally know that the first juice is not a juice at all but a mislabeled sugar and will

17  therefore not be misled. MTD at page 7.  This is a baseless generalization and cannot be

18  concluded from the pleadings properly before this court. The primary evidence in a case

19  alleging a misleading statement on product packing is the packaging itself. *Colgan v.*

20  *Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 679 (2006) (quoting *Brockey v.*

21  *Moore*, 107 Cal. App. 4th 86, 100 (2003)).  It is not unreasonable that even a high-

22  performance athlete would be misled by a label that lists a "juice" that is not a juice but

23  is actually a type of syrup next to an actual type of syrup and alongside a juice that is

24  actually a juice from concentrate. Such an ingredient list is likely to deceive consumers

25  anywhere even if the "target population" is athletes as Defendant baselessly asserts.

26  Furthermore, the label of the product is the advertising at issue in this case and since

27  there is nothing preventing non-athletes from seeing the deceptive labeling, the "target

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

population" is the general consuming public not high performance athletes, or even athletes, just anyone who could read the label.

Defendant relies on *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) for their invented reasonable athlete standard. Defendant fails to include the actual language used by the *Yumul* court in describing the correct reasonable consumer standard. The court stated:

> "Although CLRA claims need not plead reasonable or actual reliance, a CLRA plaintiff must allege that consumers are likely to be deceived under a standard "sometimes called the `reasonable consumer' standard." *Buckland*, 155 Cal.App.4th at 801, 66 Cal.Rptr.3d 543. Similarly, under the UCL, "[i]n order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising.... The law focuses on a reasonable consumer who is a member of the target population." *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 130, 103 Cal.Rptr.3d 83 (2009). This standard requires that plaintiffs "show that `members of the public are likely to be deceived.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (quoting Bank of West v. Superior Court, 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). The same standard applies under the FAL. See *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682, 38 Cal.Rptr.3d 36 (2006) ("To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived. A `reasonable consumer' standard applies when determining whether a given claim is misleading or deceptive. A `reasonable consumer' is `the ordinary consumer acting reasonably under the circumstances,' and `is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture,'" quoting 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES (4th ed. 2004), § 5:17, p. 5-103 (internal citations omitted))."

*Id*. at 1126. The court in *Yumul* applied the usual reasonable consumer standard it describes and, unsurprisingly, the *Yumul* court declined to make a finding that the product labels at issue in that case were misleading as a matter of law in a motion to dismiss. *Id*. at 1130.

Perhaps Defendant's confusion on this issue lies with a misunderstanding of *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 130, 103 Cal.Rptr.3d 83 (2009) cited by

1  *Yumul*.  *In re Vioxx,* dealt with advertising for the Vioxx brand pain medication which
2  was pulled from the market after a study indicated that it was causing foreseen
3  cardiovascular problems.  *Id.*  In *In Re Vioxx*, the court was grappling with advertising
4  to the public which did not disclose any known cardio vascular risks and disclosures to
5  physicians which downplayed the cardiovascular risks and claimed the product was
6  safe.  *Id.* at 123.  Naturally, the reasonable consumer standard could not be applied to
7  the doctors who were privy to advertising not accessible to general consumers.  In *In re*
8  *Vioxx* it was sensible and necessary to examine the target population of doctors who
9  received the advertising.  Clearly, however, *In Re Vioxx* has nothing to do with
10 deceptive packaging on Sport Beans.  There was no advertising specific to athletes in
11 this case.  Sport Beans are available for purchase by regular reasonable consumers who,
12 like the Plaintiff,  may have been misled or deceived by Sport Bean's label.

13        Defendant also relies on *Ebner v. Fresh*, Inc., 838 F.3d 958 to support the positon
14 that Sport Beans ingredients must deceive an athlete. MTD at page 7.    This reliance is
15 also misplaced.    In *Ebner*, a consumer brought suit claiming that Fresh's lip balm's
16 packaging was deceptive because did not allow for the use of 25% of the lip balm
17 contained inside the tube in which it was packaged. *Id.*    *Ebner* held that, "Plaintiff's
18 claim that **the reasonable consumer** would be deceived as to the amount of lip product
19 in a tube [] is not plausible." *Id.* at 965 (emphasis added).  The *Ebner* court did not
20 invent a standard for high end cosmetics consumers and this court should likewise not
21 invent the reasonable athlete standard that Defendant suggests.

22        The defendant's choice to describe its sugar as Evaporated Cane Juice was
23 designed to, and did, lead Plaintiff and other reasonable consumers to believe that the
24 product was of a quality that it is not and did not contain ingredients which, in fact, are
25 found in the product.   Plaintiff and members of the Class relied on Defendant's
26 misrepresentations and would not have paid as much, if at all, for the product but for
27 Defendant's misrepresentations. Complaint at ¶ 20.
28 */ / /*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNTIVE, MOTION TO STRIKE

1    The defendant wishes this court, improperly take judicial notice of consumer
2    purchasing behaviors, and absolve Plaintiff of responsibility for the misstatements in its
3    ingredient list because it complied with FDA regulations and listed its sugar content
4    elsewhere on its packaging. MTD at page 8.  Such a conclusion is improper for a
5    motion to dismiss as has been discussed above, but it also inconsistent with both logic
6    and case law.  Allowing a producer get away with making false or misleading
7    representations because they disclaim those same representations elsewhere is to grant
8    producers license to trap the trusting or unwary.  The 9th Circuit unambiguously agreed
9    with this logic finding that reasonable consumers cannot be expected to look beyond
10   misleading representations to discover the truth from the small print on back of the box.
11   *Williams v. Gerber*, 552 F. 3d 934 (9th Cir. 2008).

12   **C.  LABEL INFORMATION CANNOT BE FOUND NOT TO BE MATTERIAL**
13   **AS A MATER OF LAW.**

14   Defendant has placed themselves in the interesting if untenable position of
15   arguing that the information that they publish to communicate the nature their own
16   product to the consuming public is immaterial.  What they appear to claim is that the
17   information that they themselves caused to be published on every single one of the bags
18   of Sport Beans sold is "so obviously unimportant that the jury could not reasonably find
19   that a reasonable man would have been influenced by it.  MTD at 9 (quoting *Engalla v.*
20   *Permanente Medical Group, Inc*., 15 Cal.4th 951, 977 (1997)).  The defendant is asking
21   the court to believe that the Sport Beans ingredient list cannot, as a matter of law,
22   contain the sort of information that "a reasonable man would attach importance to [] in
23   determining his choice of action in the transaction. MTD at 9 (quoting *Kwikset Corp. v.*
24   *Superior Court*, 51 Cal.4th 310, 332 (2011)).

25   While Defendant may believe that no reasonable person would find their labels
26   to be worth relying upon, the law on the materiality of product labels is well
27   established.  In *Kwikset* the court made the materiality of labels abundantly clear.
28   "Simply stated: labels matter.  The marketing industry is based on the premise that

labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Kwikset Corp. v. Superior Court*, 51 Cal.4th at 328 (referring to *FTC v. Proctor & Gamble Co.* (1967) 386 U.S. 568, 572 [18 L.Ed.2d 303, 87 S.Ct. 1224] [ noting the central role of advertising and sales promotion in generating market share, where the competing products are functionally identical].)[2]

The plaintiff has alleged that she relied on the misrepresentations in the product label in making her purchasing decision, or in other words, that the label was material to her purchasing decision.   In her Complaint, Plaintiff alleges that the term "evaporated cane juice" concealed the fact that the ingredient was nothing more than sugar.   Complaint ¶¶ Introduction, 10, 20, 21.   Plaintiff alleges that, based on the ingredient label, Plaintiff believed that the product held less sugar than it actually did because she did not see sugar as a main ingredient. Complaint ¶¶ Introduction, 20. Plaintiff alleges that she would not have paid as much, if at all, for the product had she seen sugar as a main ingredient and understood that the product was not as it appeared to be with "evaporated cane juice" listed as a main ingredient.   Complaint ¶¶

---

[2] *Kwikset* was analizing the importance consumers placed on the "Made in America" labels placed on lock products  and, in so doing, goes much further discussing the importance of labeling. Kwikset states, " [a]n entire body of law, trademark law (see, e.g., 15 U.S.C. § 1051 et seq.; Lanham Act), exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their buying decisions." To some consumers, processes and places of origin matter. (See Kysar, Preferences for Processes: The Process/Product Distinction and the Regulation of Consumer Choice (2004) 118 Harv. L.Rev. 525, 529 ["[C]onsumer preferences may be heavily influenced by information regarding the manner in which goods are produced."]; ibid. [Although the circumstances of production "generally do not bear on the functioning, performance, or safety of the product, they nevertheless can, and often do, influence the willingness of consumers to purchase the product."].)12 Whether a particular food is kosher or halal may be of enormous consequence to an observant Jew or Muslim. Whether a wine is from a particular locale may matter to the oenophile who values subtle regional differences. Whether a diamond is conflict free13 may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger. And whether food was harvested or a product manufactured by union workers may matter to still others. (See Kasky v. Nike, Inc., supra, 27 Cal.4th at p. 969 ["For a significant segment of the buying public, labor practices do matter in making consumer choices."].)" *Kwikset Corp. v. Superior Court*, 51 Cal.4th at 328.

Introduction, 20.  Plaintiff alleges that the use of the term "evaporated cane juice" is deceptive to the extent that it hides the fact that the ingredient is nothing more than "sugar."  Complaint ¶¶ Introduction, 20, 21.  Plaintiff alleges that that the use of the term "evaporated cane juice" to describe the sweetening ingredient suggests that the product is of a different nature than it actually is.  Complaint ¶¶ Introduction, 20, 21.  Moreover, to the extent that "evaporated cane juice" suggests that the product is derived from a juice, it may have plausibly suggested that the product is healthier than regular refined sugar.

The Court should find that Plaintiff has established the materiality of this label because she has alleged: the where, what, when, who, and how of the issue (*See* Complaint ¶¶ Introduction, 2, 10-21); facts showing that Defendant's use of the term "evaporated cane juice" has concealed the fact that the ingredient is equivalent to regular sugar; and Plaintiff would not have paid as much, if at all, for the product had she known that evaporated cane juice was simply regular sugar.  *See e.g., Khasin v. Hershey Co.,* 5:12-cv-01862 EJD, 2012 WL 5471153 at *6-7 (N.D. Cal. Nov. 9, 2012) (holding that allegations that plaintiff "would not have purchased [defendant's] products… had he known the truth about these products and had they been properly labeled in compliance with the labeling regulations" were sufficient to standing).

Plaintiff has not alleged that she bought Sport Beans *only* because it contained evaporated cane juice in its ingredient list as defendant asserts. MTD at page 10.  Doubtless she attached importance to other aspects of the products label, as *Kwikse*t has pointed out, that is really why labels exist.  However, a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 328 [93 Cal.Rptr.3d 559, 207 P.3d 20].  To borrow from *Kwikset*, simply put, Defendant's labels matter and they mattered to plaintiff in making her purchasing decision.

**D.    VIOLATIONS OF LABELING LAWS CLEARLY GIVE RISE TO ACTIONABLECLAIMS**

Plaintiff puts forth a plausible claim.  She describes her purchase, the deceptive nature of the labeling, and that the labeling violates federal regulations adopted by California pursuant to the Sherman Law.  Plaintiff's allegations that "evaporated cane juice" is not a juice, is simply sugar, and not the common or usual name for sugar are sufficient to state a plausible claim.  *See e.g., Mary P. Swearingen v. Yucatan Foods, L.P.,* 24 F.Supp.3d 889, 900 (N.D. Cal. 2014) (reversed on other grounds on reconsideration – due to a finding that (1) applying primary jurisdiction doctrine was warranted and (2) dismissing suit, rather than staying suit, was appropriate under primary jurisdiction doctrine.)  This decision came before the FDA released its Final Guidance.

Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate. *See Sugawara,* 2009 WL 1439115 at *3–4 (finding that the packaging for Cap'n Crunch cereal and its use of the term "Crunch Berries" was not misleading, as a matter of law); *Videtto v. Kellogg USA,* 2009 WL 1439086 at *2 (E.D.Cal., May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit"); *McKinnis v. Kellogg USA,* 2007 WL 4766060 at *3–4 (C.D.Cal., May 21, 2007) (same).

Where the Captain Crunch case and the Crunch Berries case are obvious examples of a failure to state a plausible claim, the instant case is not.  However, a case that is analogous to the instant case is *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir.2008).    In that case, the defendant, Gerber Products, Inc. ("Gerber"), manufactured a product known as "Fruit Juice Snacks" as part of its "Graduates for Toddlers" product line. Plaintiffs filed suit against Gerber under the UCL, FAL and CLRA claiming, inter alia, that the words "Fruit Juice," juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries, was deceiving, given that the product contained no fruit juice from any of the fruits pictured on the packaging.

On appeal, the Ninth Circuit reversed the district court's dismissal of the action.

*Gerber,* 552 F.3d at 939. In reaching its decision, the court highlighted a number of features of the packaging that could likely deceive a reasonable consumer. *Id.* In particular, the court noted that the "[t]he product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product." *Id.* In addition, the packaging falsely represented that the product "was made with 'fruit juice and other all natural ingredients'" and was "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy," all of which added to the potential deception. *Id.*

Similar to *Gerber*, the product labeling here suggests that the product has significant benefits.  The ingredient list that Defendant cites in their Motion to dismiss displays evaporated cane juice and cherry juice from concentrate. MTD at page 3.  As such, Plaintiff has not put forth a ludicrous allegation likes those in the Crunch Berry or Captain Crunch cases described above.  Plaintiff has put forth a succinct and straightforward complaint that alleges that Defendant advertises its product as an athletic aid, that defendant hides the sugar content in the product by labeling sugar as "evaporated cane juice", that such labeling is done with the intent to mislead consumers into believing the product has less sugar that it actually deos, that the labeling of sugar as "evaporated cane juice is unlawful, deceptive and misleading, that Plaintiff was deceived, and the members of the class were and continued to be deceived.  These allegations bring this case in line with *Gerber* – that Plaintiff has more than pleaded a plausible claim and she has clearly satisfied the specificity requirements of Rule 9(b). COMPLAINT ¶¶ Introduction, 1-6, 10-21.[3]

Defendant's reliance on the *Pratt* is Both Misplaced.  The Defendant cites to – *Pratt v. Whole Foods Market California, Inc.,* Case No. 5:12-cv-05652, 2015 WL 5770799 (N.D. Cal. September 30, 2015).  However, Defendant leaves out a key

---

[3] Defendant clearly has a very low opinion of the worth of their products labels.  From The MTD's request to strike it appears that they do not consider their own product's labels to be advertising.

procedural issue in the case. Judge Davila, overseeing the case, stayed the case on April 18, 2016. He noted that his decision would likely be overturned on appeal, "Notably, the Ninth Circuit recently issued an opinion in *Kane v. Chobani*, No. 14-15670, 2016 US. App. LEXIS 5517, 2016 WL 1161782 (9th Cir. Mar. 24, 2016), in which it directed the district court to stay plaintiff's "natural" and "evaporated can juice" claims under the primary jurisdiction doctrine pending resolution of the Food & Drug Administration's proceedings concerning the use of those terms on food labels. Aside from a stay under *Landis, Kane* provides another basis to stay this case since it involves similar allegations." *Mains v Whole Foods Market*, Case No. 5:12-cv-05652-EJD Dckt. No. 74 (April 18, 2016).

Both the *Kane* case and the *Pratt* case were stayed in part in anticipation of the FDA's promised final guidance on "evaporated cane juice." That guidance was issued on May of 2016. That final guidance did not change the original guidance and stated, "Sweeteners derived from sugar cane should not be listed in the ingredient declaration by names such as "evaporated cane juice," which suggest that the ingredients are made from or contain fruit or vegetable "juice" as defined in 21 CFR 120.1. We consider such representations to be false and misleading under section 403(a)(1) of the Federal Food, Drug, & Cosmetic Act (the Act) (21 U.S.C. 343(a)(1)) because they do not accurately describe the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups), as required by 21 CFR 102.5." Exhibit A to Declaration of Thomas W. Kohler.

Both the *Kane* case and the *Pratt* case were stayed in part in anticipation of a ruling in *Brazil v. Dole Packaged Foods, LLC*, D.C. No. 5:12-cv-01831-LHK, Docket No. 14-17480 (Dckt 51). The *Brazil* case was premised on the use of the advertising "all natural." The anticipated appellate court ruling states, "Brazil's claims under each of these statutes are evaluated from the perspective of a reasonable consumer, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), that is, "the ordinary consumer

acting reasonably under the circumstances," *Colgan v. Leatherman Tool Grp., 38 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2006) (citation and quotation marks omitted).*

> In 1993, the FDA informally defined "natural" to mean "that nothing artificial or synthetic … has been included in, or has been added to, a food that would not normally be expected to be in the food." Food & Drug Admin., *Food Labeling, Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food,* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993). In addition to this informal policy, Brazil cited more recent FDA warning letters to food sellers. These sellers had described their products as "100% Natural" or "All Natural," and the FDA accused those descriptions of being deceptive because the products in question included synthetic citric acid, among other substances. The FDA's letter did not always rely on the limitation that an artificial or synthetic product would "not normally be expected to be in the food" – and, in fact, asserted that foods that naturally contain citric acid (such as tomatoes) may not be labeled "all natural" if synthetic citric acid is added to them.
>
> Taken together, this evidence could allow a trier of fact to conclude that Dole's description of it products as "All Natural Fruit" is misleading to a reasonable consumer.

*Brazil v. Dole Packaged Foods, LLC*, D.C. No. 5:12-cv-01831-LHK, Docket No. 14-17480 (Dckt 51).

While the *Brazil* case revolved around the labeling claim of "All Natural", there is very little difference between *Brazil* and the instant case that challenges the ingredient labeling of sugar as "Evaporated Cane Juice." Not only is the FDA in agreement with Plaintiff now, but it has been even prior to the 2009 guidance as seen by the attached warning letters (Exhibits B & C to Kohler Decl.) that came out long before the 2009 guidance. Defendant's argument that a reasonable consumer could not be misled by the ingredient "sugar" being listed as "evaporated cane juice" is nonsensical. Defendant's assertion that no reasonable person could be deceived by the ingredient sugar being labeled as "Evaporated Can Juice" flies in the face of common sense, the

- 16 -

repeated FDA warning letters, the 2009 FDA guidance that stated in no uncertain terms that the term "Evaporated Can Juice" was false and misleading, the 2016 FDA guidance that stated in no uncertain terms that the term "Evaporated Cane Juice" was false and misleading, and current case law.

On pages 10 and 11 of Defendant's MTD, Defendant discusses and attempts to marginalize the FDA's guidance. Contrary to Defendant's assertion that Plaintiff relies on the FDA's Final Guidance Letter ("Final Guidance") issued in 2016 regarding evaporated cane juice, Defendant is wrong – as the Final Guidance states. "FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. *Instead, guidances describe our current thinking on a topic and should be viewed only as recommendations, **unless specific regulatory or statutory requirements are cited.*** The use of the word *should* in FDA guidances means that something is suggested or recommended, but not required." (emphasis added). Defendant is absolutely right that the Final Guidance is not a legally binding document upon which Plaintiff can base her claim. However, Plaintiff is not basing her claim on the Final Guidance.  Plaintiff is basing her claim on statutes and regulations that were in effect and were being enforced long before either the First Guidance or the Final Guidance, many of which are mentioned specifically in Plaintiff's CLRA Notice Letter, Plaintiff's COMPLAINT, and the Final Guidance.

Below is a list of the FDA's non-binding views on evaporated cane juice, per the Final Guidance:

- More specifically, this guidance is intended to advise the regulated industry of our view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener and to assist manufacturers in appropriately labeling products that contain sweeteners derived from the fluid extract of sugar cane.
- However, as discussed in detail in section III of this guidance document, FDA's view is that such sweeteners should not be declared on food labels as "evaporated cane juice" because that term does not accurately describe the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) (Refs. 1, 2, 3).

- Some comments stated that "evaporated cane juice" has essentially the same composition as white sugar and other sweeteners derived from sugar cane. As support for this point, one comment provided a specification sheet for "evaporated cane juice" indicating that the ingredient contains between 99.0 and 99.8% sucrose. The comment also included a specification sheet for another product identified as "certified organic sugar" and pointed out that the composition of the two products was identical except that the organic ingredient was made with organic sugar cane.
- This guidance is intended to help consumers make informed choices among sweeteners by promoting accurate and consistent labeling. To that end, we are advising the regulated industry of our view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener and that this ingredient should instead be declared on food labels as "sugar," preceded by one or more truthful, non-misleading descriptors if the manufacturer so chooses (e.g., "cane sugar").
- Sugar cane is clearly not considered a fruit or vegetable by experts in nutrition and health, nor do those experts consider the fluid extract of sugar cane to be a type of fruit or vegetable juice. Rather, they consider it to be a source of sugar.
- A newsletter posted on the Department of Health and Human Services Web site warns that "cane juice" is one of the ingredient names used to hide added sugar in beverages and recommends for health reasons that any fruit juice given to children be 100 percent fruit juice without any form of added sugar, including "cane juice."[4]
- In FDA's view, the common or usual name for the ingredient currently labeled as "evaporated cane juice" includes the term "sugar" and does not include the term "juice." The basic nature of the ingredient is that it is a sugar and its characterizing property is that of a sweetener.

While Defendant is correct that the Final Guidance is not binding and the above statements are part of the non-binding Final Guidance, it would be nonsensical to take the position that the above statements are not persuasive to the Court or to a jury.

---

[4] U.S. Department of Health and Human Services, Office of Head Start, National Center on Health. "Health Services Newsletter: The Role of Drinks with Sugar in Children's Oral Health." February 2015. http://eclkc.ohs.acf.hhs.gov/hslc/tta-system/health/docs/health-services-newsletter-201502.pdf. Retrieved April 20, 2016.

1   Even before Judge Koh's order in the *Kane* was reversed, Judges in this circuit

2   were not following Judge Koh's argument against evaporated cane juice.  In *Morgan v.*

3   *Wallaby Yogurt Co.,* No. 13-cv-00296-WHO, 2014 U.S. Dist. Lexis 34548 at *12-18

4   (N.D. Cal. Mar. 13, 2014), Judge Orrick observed: "The COMPLAINT does not say

5   that plaintiffs actually know what 'dried cane syrup' is, it merely contains numerous …

6   paragraphs that their counsel appears to have included to explain what may or may not

7   be appropriate labeling under the applicable laws." *Id*. at 17 n. 5. Judge Orrick stated:

8   
9                I do not find it implausible… that a reasonable consumer
             would not equate "dried cane syrup" with "evaporated cane
10           juice."  Juice and syrup are quite different.  More important, it
             does not matter what the plaintiffs thought "evaporated cane
11           juice" was if not sugar.   [Defendant's] arguments are
             unavailing and the plaintiffs adequately plead reliance.
12  *Id*. at 17-18.

13   This case is indistinguishable from *Wallaby* in that regard. "Evaporated cane

14  juice" is the most prevalent ingredient in Defendant's product. It is not beyond the pale

15  that health conscious consumers looking at an ingredient list would note that and be

16  more likely to buy the product than they would have been had they known that "juice"

17  was sugar. Defendant can make the argument that they were not trying to mislead

18  consumers or that it is entirely improbable that any consumer would be mislead, but

19  when contrasted with the facts, laws, and regulations, Defendant's unsupported opinion

20  is just that…an unsupported opinion by a defendant trying to sidestep liability for its

21  own labeling decisions.

22   The above is also supported by the U.S. Supreme Court:

23                The fact that a false statement may be obviously false to
             those who are trained and experienced does not change its
24           character, nor take away its power to deceive others less
             experienced.  There is no duty resting upon a citizen to suspect
25           the honesty of those with whom he transacts business.  Laws
             are made to protect the trusting as well as the suspicious.  The
26           best element of business has long since decided that honesty
             should govern competitive enterprises, and that the rule of
27

28

- 19 –

*caveat emptor* should not be relied upon to reward fraud and deception.

*FTC v. Standard Education Soc.,* 302 U.S. 112, 116 (1937).

"To fail to prohibit such evil practices would be to elevate deception in business and to give to it the standing and dignity of truth." *Id*.

The bottom line is that Defendant has not shown at all that a reasonable consumer could not be misled. Regardless, Defendant's label listing "Evaporated Cane Juice" is simply unlawful pursuant to the many statutes cited in this Opposition.

Below is a list of statutes and regulations, which are binding and are the basis for Plaintiff's class action, per the Final Guidance (emphasis added to statutes and regulations and the FDA's view regarding false and misleading labeling):

- Moreover, the use of "juice" in the name of a product that is essentially sugar is confusingly similar to the more common use of the term "juice" -- "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree" (**21 CFR 120.1(a)).** Thus, the term "evaporated cane juice" is false or misleading because it suggests that the sweetener is "juice" or is made from "juice" and does not reveal that its basic nature and characterizing properties are those of a sugar.
- As provided in **21 CFR 101.4(a)(1),** "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . .."
- The common or usual name for an ingredient is the name established by common usage or by regulation (**21 CFR 102.5(d)).**
- The common or usual name, which may be a coined term, must accurately describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients; must be uniform among all identical or similar products; and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (**21 CFR 102.5(a)).**
- Sugar cane products with common or usual names established by regulation are sugar (**21 CFR 101.4(b)(20))** and cane sirup (alternatively spelled "syrup**") (21 CFR 168.130).**
- For purposes of ingredient labeling, "sugar" is defined to mean sucrose obtained from sugar cane or sugar beets in accordance with **21 CFR 184.1854**, the regulation affirming that sucrose is generally recognized as safe (GRAS) for use in food when used under specified conditions.

- The GRAS regulation describes sucrose as the substance "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated" (**21 CFR 184.1854(a)**).

- Based on comments stating that the ingredient sometimes declared as evaporated cane juice is not made from cane syrup as defined in **21 CFR 168.130**, FDA is no longer recommending that this ingredient be labeled as "dried cane syrup."

- In developing this guidance, FDA reviewed the Codex Alimentarius Commission's (Codex's) Standard for Sugars, **Codex Stan. 212-1999 (Ref. 4)**, which provides standards for certain sugars intended for human consumption without further processing, to determine whether Codex had established a standard for a product similar to that described on some U.S. food labels as "evaporated cane juice." The Codex Standard for Sugars contains no product identified as "evaporated cane juice." However, the Codex standard does define "raw cane sugar" [p]artially purified sucrose, without further purification, but which does not preclude centrifugation or drying, and which is characterized by sucrose crystals covered with a film of cane molasses." This standard appears to describe the same sweetener referred to in many of the comments as "evaporated cane juice." We agree that the common or usual name used to describe this ingredient on food labels should include the term "sugar" because that term describes the basic nature and characterizing properties of the food.

- In contrast, the term "evaporated cane juice" describes neither the basic nature of the food nor its characterizing properties, and therefore does not comply with **21 CFR 102.5(a)**.

- "Juice" is defined by **21 CFR 120.1(a)** as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." This relatively narrow definition is the one used for purposes of the juice hazard analysis and critical control point (HACCP) regulations (**21 CFR Part 120**) and the juice labeling regulation in **21 CFR 101.30**.

- There are broader definitions of "juice" that are used in other contexts. For example, in the context of botany and food technology, "juice" is a general term referring to the nutrition, "juice" has the narrower meaning reflected in the definition of "juice" in **21 CFR 120.1(a),** which covers only liquid obtained from fruits or vegetables. Although we do not dispute that sugar cane is a member of the vegetable kingdom in the broad sense of classifying an article as "animal," "vegetable," or "mineral," FDA considers the term "vegetable" in the context of the juice definition to refer more narrowly to edible plant parts that consumers are accustomed to eating as vegetables in their diet. Sugar cane is not a vegetable in this sense. While consumers can

purchase pieces of sugar cane, consumers do not eat sugar cane as a "vegetable" but instead use it as a source of sugar by chewing on the cane or its fibers or by placing the cane in a beverage to sweeten it.

- FDA's food labeling regulations provide that sucrose obtained from sugar cane or sugar beets in accordance with **21 CFR 184.1854** shall be referred to as "sugar" in ingredient labeling **(21 CFR 101.4(b)(2)).**

- **Section 184.1854(a)** describes sucrose as the substance "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." Based on the numerous comments indicating that the ingredient declared as "evaporated cane juice" is produced in this manner, it follows that the common or usual name for the product should be or include "sugar."

- Sweeteners derived from sugar cane should not be listed in the ingredient declaration by names such as "evaporated cane juice," which suggest that the ingredients are made from or contain fruit or vegetable "juice" as defined in **21 CFR 120.1.**

- ***We consider such representations to be false and misleading under section 403(a)(1) of the Federal Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 343(a)(1))*** because they do not accurately describe the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups), as required by 21 **CFR 102.5.**

## E. THE PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF BEFORE THIS COURT

The Courts have rejected the argument that a plaintiff cannot establish standing if he has learned that a label is misleading and therefore will not be fooled by it again. *See Ries v. Arizona Beverages USA LLC.*, 287 F.R.D. 523, 533 (N.D. Cal 2012) ("were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."). Nonetheless, courts do require plaintiffs to express an intent to purchase the products in the future. See, e.g., *Rahman v. Mott's LLP*, No. 13–3482, 2014 WL 325241, at 10 (N.D.Cal. Jan. 29, 2014). Defendant makes many products that the Plaintiff would consume in the future, however, without injunctive relief, she cannot rely on Defendant's labels now or in the future.  Without the sought injunctive relief, there is nothing to keep the Defendant

1  from violating all the listed regulations and applicable labeling laws again, after all,

2  they have already expressed their feelings about the FDA's guidance and the laws

3  behind it. (MTD at 12).  Plaintiff's need for reliable labeling is, doubtless, unimportant

4  to Defendant who places so little value on the information in their own labeling but this

5  need, nonetheless constitutes a continuous and ongoing injury to Plaintiff requiring

6  injunctive relief to cure.

7          Even if the plaintiff's ongoing inability to rely on Defendant's labels is

8  insufficient to convey standing, the appropriate remedy is remand of the injunctive

9  relief claims to California court.    *Machlan v. Procter & Gamble Company*, 77

10  F.Supp.3d 954 (2015).  In *Machlan*, this court held that,

11
12          "Injunctive relief is an important remedy under California's consumer
            protection laws. See, e.g., *In re Tobacco II*, 46 Cal.4th at 319, 93
13          Cal.Rptr.3d 559, 207 P.3d 20 ("the primary form of relief available under
            the UCL to protect consumers from unfair business practices is an
14          injunction"). Allowing a defendant to undermine California's consumer
            protection statutes and defeat injunctive relief simply by removing a case
15          from state court is an unnecessary affront to federal and state comity.  This
            case was originally filed in a California state court by a California plaintiff
16          on behalf of a putative class of California residents under California's state
            laws. A California state court ought to decide whether injunctive relief
17          is appropriate for plaintiff's claims. Respect for comity and federalism
            compel that conclusion, and just tossing aside the state's injunction remedy
18          because of this Court's limited jurisdiction is an unwarranted federal
            intrusion into California's interests and laws.
19
20
21
22  *Id.* at 962.  The court ultimately held, "The portions of plaintiff's claims that seek

23  injunctive relief under the UCL, FAL and CLRA are remanded to the California

24  Superior Court for the City and County of San Francisco. The Court will implement

25  appropriate case management and scheduling orders to ensure smooth sailing of this

26  case in relation to the state action." *Id*. *Machlan* pointed out the absurdity of dismissing

27  instead of remanding, noting that "an action like this one could become stuck in a

28  perpetual loop of (1) plaintiff's re-filing in state court, followed by (2) removal by

defendants and then (3) dismissal by this Court. If such a scenario were to play out, plaintiff's claims would likely be prevented from being adjudicated on the merits, definitely so once the statute of limitations on plaintiff's claims expires." *Id* at 961.

## IV.  CONCLUSION

For the reasons stated herein, the other papers on file in this matter, and such oral argument as shall be presented at the Motion hearing, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Dated:  May 22, 2017                     APEX TRIAL LAW
                                         A Professional Corporation


                                         By:*/s/Ryan M. Ferrell*
                                             Ryan M. Ferrell
                                             Attorney for Plaintiff and the Class

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNTIVE, MOTION TO STRIKE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2017, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

 */s/ Ryan M. Ferrell*
Ryan M. Ferrell

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNTIVE, MOTION TO STRIKE